**FIRST NATIONAL BANK AND TRUST COMPANY OF WILLISTON, a national banking corporation, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a capital stock corporation, Defendant.**

**Civ. No. A4–90–007.**

United States District Court,
D. North Dakota,
Northwestern Division.

Aug. 29, 1991.

---

Frederick E. Whisenand, Jr., McIntee & Whisenand, Williston, N.D., for plaintiff.

Richard N. Jeffries, Erik J. Askegaard, Jeffries, Olson & Flom, Moorhead, Minn., for defendant.

### MEMORANDUM AND ORDER

BENSON, Senior District Judge.

Plaintiff, First National Bank and Trust Company of Williston (First National), the insured, and defendant, St. Paul Fire & Marine Insurance Company (St. Paul), entered into a contract of insurance. The policy provided comprehensive general liability protection. First National brought

this action asserting that St. Paul breached its duty to provide the bank with a defense or protection in an underlying suit brought against the bank by a third party.

The parties have each filed a rule 56, Federal Rules of Civil Procedure, motion for summary judgment.

■ Summary Judgment is available to a party when a review of the pleadings and other documents filed indicate there exists no genuine issue of material fact and therefore, a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A Court considering a motion for summary judgment must view the evidence in a light most favorable to the non-moving party. In so doing, the non-moving party is entitled to all reasonable inferences that can be drawn from the evidence. *Vacca v. Viacom Broadcasting of Missouri, Inc.*, 875 F.2d 1337, 1339 (8th Cir.1989). Following a hearing, the court has considered the motions for summary judgment filed by both parties and has determined that defendant is entitled to a summary judgment of dismissal of plaintiff's complaint.

### Factual Background

On a review of the record, the court concludes there are no genuine issues of material fact.

On May 21, 1986, First National purchased an insurance policy from St. Paul, the premium for which was $8,661.00. The policy was in effect from May 21, 1986 until May 21, 1987. It provided comprehensive general liability protection. First National was covered for damages and for the defense of bodily injury and property damage claims arising out of an accidental event. Included in the policy was a broadening endorsement that, among other things, expanded the definition of bodily injury to cover a range of mental and emotional harm.

On February 11, 1987 an underlying suit was brought against First National by Jerry Harmon Motors Inc. and Jerry Harmon personally. The amended complaint alleged that First National had willfully, wantonly, and maliciously refused to honor its contractual obligations with Harmon, and had willfully, wantonly, and maliciously refused to honor certain checks drawn on accounts which Harmon had at First National. The underlying suit alleged that Harmon Motors Inc. suffered economic damages, which subsequently resulted in its having to go out of business. It was further alleged that Jerry Harmon personally had suffered economic damages as well as embarrassment and extreme emotional upset.

First National provided a copy of the underlying complaint to St. Paul and requested that it assume coverage and defend the bank. Throughout the underlying litigation First National provided St. Paul with copies of documents and information pertaining to the suit.

Based on its contention that the underlying suit alleged harm by intentional acts of bank employee officers, and since the policy only provided protection for covered injuries that occurred as a result of accidental events, St. Paul declined the claim.

### Discussion

This action is before the court on diversity jurisdiction. The substantive law of the State is applicable. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

The only issue in the case now before this court is whether the comprehensive general liability insurance policy which plaintiff had purchased from defendant provided coverage to plaintiff on the claims made against it by Harmon.

St. Paul's position is that a determination of coverage is properly made by simply reviewing the allegations in the underlying complaint. St. Paul asserts that the underlying suit brought by Harmon against First National was for alleged damages to Harmon resulting from intentional conduct of bank officers. St. Paul determined that because the policy provided for coverage for bodily injury and property damage that occurred as a result of accidental events, it

had no duty to provide a defense and or indemnification on the underlying suit.

First National, on the other hand, contends that St. Paul's decision on whether to provide coverage should have been made by looking at the underlying complaint in addition to reviewing all other factual circumstances that were brought to the attention of St. Paul. It was First National's position that had St. Paul reviewed all the information that First National had provided, a determination of coverage would have been found.

■ The information that an insurance company must consider when making a determination of whether coverage is present is an issue on which the North Dakota Supreme Court has made a decisive and controlling holding:

> Our decisions in *Kyllo* [*v. Northland Chemical Co.*, 209 N.W.2d 629 (N.D.1973) ], *supra*, and *Applegren* [*v. Milbank Mutual Insurance Co.*, 268 N.W.2d 114 (N.D.1978) ], *supra*, require an insurer to defend actions against an insured if the allegations in the complaint against the insured give rise to potential liability or a possibility of coverage under the language in the insurance policy. Although Kovash frames the duty-to-defend issue in terms of an obligation to investigate facts independent of the complaint, the proper inquiry under *Applegren* and *Kyllo* is whether the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy.

*National Farmers Union Property and Casualty Company v. Kovash*, 452 N.W.2d 307, 309 (N.D.1990) (citations omitted). Thus, the North Dakota Supreme Court has determined that an insurance company's decision whether to provide a defense

to an insured in an underlying suit is properly made by reviewing the underlying complaint, without a requirement that an independent investigation of the allegations contained in the complaint be undertaken. *Id.* The duty to defend, therefore, is present if at a minimum reviewing the underlying complaint reveals a possibility of coverage for a claim that is covered by the insurance policy. The insurance policy at issue provides for comprehensive liability protection if due to an accidental event, the bank is deemed legally responsible to pay damages for bodily injury or property damage to another.

In light of the North Dakota Supreme Court's decision in *Kovash*, First National, to prevail in this matter, will have to establish that upon a review of the underlying complaint, St. Paul should have recognized its "potential liability or a possibility of coverage under the insurance policy." *Kovash*, 452 N.W.2d 307, 309 (N.D.1990).

■ First National contends that Harmon's claim in the underlying suit for extreme emotional upset and embarrassment constitutes bodily injury as defined in the insurance policy's broadening statement.[1] This contention appears well founded. However, a finding by this court that Harmon's claim for extreme emotional upset and embarrassment actually does constitute bodily injury would not, standing alone, be enough to establish St. Paul's duty to defend First National. The policy requires the bodily injury to have occurred because of an accidental event. It becomes necessary, therefore, to determine in the context of the policy, the meaning of "accidental event."

The policy defines accidental event as, "any **event** that results in bodily injury or property damage that the protected person didn't expect or intend to happen."[2] Plain-

---

1. Insurance policy at issue in this case provided the following broadening endorsement:
   Mental Harm Coverage
   The term **"bodily injury"** as used in your General Liability Protection is expanded to cover mental harm, mental anguish or mental illness whether or not there has been physical harm or illness.

2. The policy of insurance between the parties in this case provides in pertinent part as follows:

**What This Agreement Covers**
This agreement covers the type of claim—Bodily Injury or Property Damage—for which a limit is shown in the Coverage Summary. We'll pay amounts you and others protected under this agreement are legally required to pay as damages for a covered bodily injury or

tiff's Complaint (Doc. # 5 Exhibit A), at 5 (photocopy of the insurance policy in question) (emphasis added). Thus, in order to establish that there was coverage under the policy, First National will have to show that the bodily injury Harmon may have suffered occurred because of an **event** the bank did not expect to happen. Therefore, to define "accidental event", we must first determine the meaning of the word "event".

As St. Paul correctly notes in its brief, the term, "event" has been distinguished from the term "act." "[A]n **act** is the product of the will whereas an **event** is an occurrence which takes place independent of the will such as an earthquake or flood." Defendant's Brief (Doc. # 16), at 12 (quoting Black's Law Dictionary 498 (5th ed. 1979) (emphasis added)).

To determine whether the underlying complaint in this action alleged harm due to an "act" or alleged harm due to an "event," the following inquiry must be made: Was the underlying complaint alleging harm caused by "products of the will" or alternatively, were the allegations advancing a theory that the harm was caused by "occurrences which take place independent of the will"? First National's directors made thoughtful choices when they decided whether or not to advance money to Harmon. Those same bank employees also made choices of the same nature when they dishonored Harmon's checks. Such decisions are logically classified as "prod-

ucts of the will." The court holds on the basis of the undisputed facts in this case the underlying complaint alleged damages resulting from certain "acts" of First National's employees.

In its reply brief First National contends that it did not expect Harmon Motors to cease operations and bring a law suit against the bank. First National then argues that because the suit was not expected by the bank, whatever motivated Harmon to file the suit should be labeled an "accidental event" as defined in the insurance policy. This argument fails because to be an "accidental event", an occurrence must first be an event. The court has determined that the underlying complaint alleged damages the result of occurrences properly construed as "acts" not "events" and thus, a finding of no event forecloses a finding of an "accidental event." The unexpected consequences of the bank's intentional acts do not support a relabeling of those acts as being accidental events.

The court finds that North Dakota law provides that an insurer may determine whether it is obligated to defend a claim against an insured by doing no more than reviewing the allegations in the underlying complaint. From a review of the complaint in the underlying action, St. Paul Fire and Marine properly determined that no duty to assume coverage and defend the bank existed. Further, St. Paul is not required to indemnify First National Bank for the expense incurred in defending the underlying

property damage claim resulting from an accidental event.
**Bodily injury** means any physical harm to a person's health including sickness or disease that happens while this agreement is in effect. If a bodily injury is covered, we'll cover damages for care loss of services or death resulting from the injury.
**Property damage** means any damage to tangible property of others that happens while this agreement is in effect. This includes loss of use of the damaged property resulting from the damage. Property damage also includes loss of use of others property that hasn't been physically damaged if caused by an accidental event that happens while this agreement is in effect.
**Injury or damage.** When we say "injury or damage" we mean bodily injury or property damage.

**Accidental event** means any event that results in bodily injury or property damage that the protected person didn't expect or intend to happen.
**Defending lawsuits.** We'll defend any suit brought against you or any other protected person for covered claims, even if the suit is groundless or fraudulent. We have the right to instigate negotiate and settle any suit or claim if we believe that is proper. We'll pay all costs of defending the suit, including interest on that part of any judgment that doesn't exceed the limit of coverage that applies. But we won't defend a suit or pay a claim after the limit of coverage has been used up in paying judgments or settlements.

suit brought against the bank by Jerry Harmon.

## ORDER FOR JUDGMENT

IT IS ORDERED that Plaintiff's motion for summary judgment (doc. # 20) be dismissed as being without merit.

IT IS FURTHER ORDERED Defendant's motion for summary judgment (doc. # 15) is granted. Judgment shall be entered for the dismissal of plaintiff's complaint against St. Paul Fire and Marine Insurance Company with prejudice.